UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ARTHUR BORNSTEIN,**<br><br>      Plaintiff,<br><br>v.<br><br>**MCMASTER-CARR SUPPLY COMPLANY,**<br><br>      Defendant. | Case No. 23–cv–02849–ESK–EAP |
| **ARTHUR BORNSTEIN,**<br><br>      Plaintiff,<br><br>v.<br><br>**MCMASTER-CARR SUPPLY COMPLANY,**<br><br>      Defendant. | Case No. 25–cv–00701–ESK–EAP<br><br>OPINION |

**KIEL, U.S.D.J.**

    **THESE NON-CONSOLIDATED MATTERS** are before the Court on defendant McMaster-Carr Supply Company's motion to dismiss the amended complaint (Motion) (*Bornstein I*[1] ECF No. 48).   Plaintiff filed an opposition to the Motion.  (ECF No. 53.)   McMaster-Carr did not file a reply to plaintiff's opposition. For the following reasons, the Motion will be granted. Additionally, because plaintiff asserts the same claims against McMaster-Carr in the matter under Case No. 23-cv-00701 (*Bornstein II*), the Court will *sua*

---

[1] Case No. 23-cv-02849 will be referred to as "*Bornstein I.*"

*sponte* dismiss the claims against McMaster-Carr and remand the *Bornstein II* case to the Superior Court of New Jersey.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff filed his original complaint on May 24, 2023.  (ECF No. 1.) Magistrate Judge Elizabeth A. Pascal granted McMaster-Carr's motion for a more definite statement.  (ECF No. 43.)  Judge Pascal discerned the original complaint to assert a claim against McMaster-Carr for "improperly releas[ing] $700,000 from [p]laintiff's ex-wife's retirement fund to her without notice to [p]laintiff."  (*Id.* p.2.)  Plaintiff claims he was entitled to some of the money in the retirement fund under a Qualified Domestic Relations Order (QDRO).  (*Id.* p.2.)  In her memorandum opinion and order, Judge Pascal noted a number of deficiencies in the original complaint: (1) "aside from making the conclusory statement that there was an ERISA violation, [] fails to plead specific facts identifying [McMaster-Carr's] actions that allegedly violated this Act"; (2) "[t]he general allegation of an ERISA violation in the [original complaint] is 'so vague [and] ambiguous' that [McMaster-Carr] would not be able to form a meaningful response"; (3) "[p]laintiff does not make a clear connection between the [McMaster-Carr] and the claims" in the original complaint; and (4) although the original complaint "makes references to a divorce proceeding and other state court proceedings … without a clear connection to [McMaster-Carr], the purpose of these allegations are unclear.*"  (Id.* p.6, 7.)

Plaintiff, thereafter, filed three iterations of amended complaints.  (ECF Nos. 44, 45, 46.)  The Court considers the third amended complaint (ECF No. 46 (Compl.) to be the operative complaint.  The operative complaint does little to clear up what the bases for plaintiff's claims against McMaster-Carr are. However, plaintiff summarizes his claims as follows:

> Plaintiff brings this Complaint seeking among other things, relief under 29 U.S.C. 203(d) et seg. in connection with defendants' refusal and failure to hold and protect a

2

> QDRO account $'s due the Alternate Payee, violating its fiduciary duties under ERISA, and equitable relief under ERISA, known as the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); 29 U.S.C. 1001 et. Seg. causing substantial harm to Plaintiff, Alternate Payee of the McMaster-Carr retirement funds regarding the Qdro, the plan administrator did not keep Alternate Payee's future share owed to Alternate Payee safe to remain under the plan's control while knowing that a Qdro was imminent by 84+ attorney correspondences between Attorneys, the Payee's hired Qdro writing company, the McMaster-Carr Plan Administrator and the Payee being the McMaster-Carr employee.

(ECF No. 45–1 ¶ 1.)

From what can be discerned from the original and operative complaints, it appears that plaintiff is alleging that his ex-spouse was a former employee of McMaster-Carr. (Compl. ¶ 46.) Plaintiff's ex-spouse was a participant in the McMaster-Carr Supply Company Profit Sharing Plan (Plan), a retirement plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). (*Id.*) Apparently, plaintiff's ex-spouse "retire[d] early" in 2011 and "McMaster-Carr['s] … plan administrator decided to disperse the full $700,000 valuation to [plaintiff's ex-spouse] becoming a premature release in year 2011 without notifying the court system, the plaintiff's separate attorneys or the [p]laintiff (alternate Payee) of the release for years and years." (*Id.* ¶ 53.) Plaintiff alleges that McMaster-Carr breached its fiduciary duty to plaintiff by failing to hold the funds in his ex-spouse's retirement account in trust for him because a QDRO was "imminent." (*Id.* ¶ 1.)

Plaintiff attaches various exhibits to the operative complaint to bolster his claims. They include summaries of the following communications: (1) an August 22, 2013 communication from McMaster-Carr to Bonnie Frost, plaintiff's prior legal counsel, stating that plaintiff's ex-spouse did not have any account balance with the McMaster-Carr Profit Sharing Trust (ECF No 46–1

p. 45 ¶ 28); (2) a January 2, 2014 email between Frost and plaintiff "informing [plaintiff that his] ex-wife removed all the assets from her company retirement account" *(Id.* p. 50 ¶ 10); and (3) an email from Frost to plaintiff on January 2, 2014 advising that "[w]e received notice [that plaintiff's] ex-wife removed the entire 401K." *(Id.* p. 50 ¶ 11.)

## II.  STANDARD

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  To survive dismissal under Federal Rule of Civil Procedure (Rule) 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  Courts shall dismiss a complaint for failure to state a claim when "no relief could be granted under any set of facts which could be proved consistent with the allegations.  *Celgene Corp. v. Teva Pharms, USA, Inc.*, 412 F.Supp.2d 439, 443 (D.N.J. 2006).

## III.  DISCUSSION

A claim for an ERISA fiduciary duty claim must be commenced by the earlier of three years from a plaintiff's knowledge of the alleged breach or six

years after the date of the alleged breach. 29 U.S.C. §1113. The statute of limitations under §1113 is a statute of repose, which "effect[s] a legislative judgment that a defendant should be free from liability after a legislatively determined period of time." *Intel Corp. Investment Policy Committee v. Sulyma*, 589 U.S. 178, 180 (2020). As a statute of repose, the six-year limitation is intended to "give ERISA fiduciaries assurance that they will not be held liable for events that occurred more than six years in the past." *Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784-0DE, 2018 WL 3949697, at *3 (N.D. Ga. May 2, 2018).

Whether plaintiff claims that McMaster-Carr concealed the alleged breach of fiduciary duty or not, plaintiff's claim of McMaster-Carr's breach of fiduciary duty was commenced far beyond the expiration of the statute of limitations. The alleged breached occurred in 2011 when McMaster-Carr allegedly permitted the "improper release of all funds to [plaintiff's ex-spouse] in 2011." (Compl. p. 8 ¶ 45.)[2] Plaintiff's filing of the original complaint in May 2023 (ECF No. 1) was six years too late.

Plaintiff argues that "[t]here are no time limitations" to bring an ERISA breach of fiduciary duty claim where there has been a "concealment of facts concerning committing Fraudulent acts." (Compl. p. 5 ¶ 28.) 28 U.S.C. §1113 does provide that "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." The discovery-rule, however, does not save plaintiff's breach of fiduciary claim from dismissal. By plaintiff's own admission in the exhibits

---

[2] *See also* Compl. p. 10 ¶ 53 ("McMaster-Carr … plan administrator decided to disperse the full $700,000 valuation to [plaintiff's ex-spouse] becoming a premature release in year 2011 without notifying the court system, the plaintiff's separate attorneys or the [p]laintiff (alternate Payee) of the release for years and years.")

5

attached to the operative complaint,[3] plaintiff was aware of the alleged improper disbursement of funds to his ex-spouse by 2014. Putting aside that plaintiff does not set forth factual allegations of how McMaster-Carr fraudulently concealed information from him, plaintiff concedes: (1) that his prior attorney, Bonnie Frost, Esq., was informed by McMaster-Carr on August 22, 2013 that plaintiff's ex-spouse's account "did not have a … balance with the" Plan (ECF No. 46–1 p. 45 ¶ 28); (2) Frost was informed on January 2, 2014 by email that plaintiff's ex-spouse "removed all the assets from her company retirement account" (*Id.* p. 50 ¶ 10); and (3) Frost advised plaintiff by email on January 2, 2014 that she had "received notice ex-wife removed the entire 401K." (*Id.* p. 50 ¶ 11.) Accordingly, consistent with plaintiff's allegations, he was aware of the alleged improper distribution of funds from his ex-spouse's account by January 2, 2014, at the latest. Plaintiff's filing of the original complaint in June 2023—over nine years after receiving actual notice—was far beyond even the extended period of the statute of limitations if plaintiff had properly pleaded fraudulent concealment by McMaster-Carr.

Accordingly, plaintiff's claims against McMaster-Carr will be dismissed with prejudice.[4]

---

[3] When deciding a motion to dismiss, I can consider "exhibits attached to the complaint[.]" *Potter v. Balicki*, Civil No. 05–3971 (RMB), 2008 WL 750545, at *2 (D.N.J. March 19, 2008) (citation omitted)

[4] A new amended complaint cannot cure the statute of limitation bar. *See Cowell v. Palmer Tp.*, 263 F.3d 286, 296 (3d Cir. 2001) (citation omitted) (concerning the plaintiff's takings claim "leave to amend need not be granted when amending the complaint would clearly be futile"); *Dooley v. Dasher*, Civil Action No. 21–04036 (JXN) (SDA), 2024 WL 5135640, at *6 (D.N.J. December 17, 2024) (dismissing the plaintiff's second amended complaint with prejudice because the second amended complaint was "barred by the statute of limitations").

## IV. CLAIMS IN *BORNSTEIN II*

McMaster-Carr removed the *Bornstein II* case on January 23, 2025. (*Bornstein II* ECF No. 1.) *Bornstein II* consists of two consolidated cases before the Superior Court of New Jersey, Monmouth County. (*Id.* p.1.) McMaster-Carr was served with a summons and other papers indicating that plaintiff was seeking to add it as a party-defendant in consolidated-matters before the Superior Court of New Jersey, Monmouth County. (*Id.* pp.1, 2.) The pleadings served with the summons on McMaster-Carr "lists a single count against McMaster Carr [for] 'Violation of ERISA BREACH OF FIDUCIARY DUTIES.'" (*Id.* p.3; ECF No. 1–1 p.23.)

In response to the removal of *Bornstein II*, plaintiff filed a request for "remand to be simultaneously heard in both federal/state court." (*Bornstein* I ECF No. 56; *Bornstein II* ECF No. 4.) From what I can decipher from plaintiff's request, plaintiff seeks the remand of the *Bornstein II* matter because there are eight other defendants in that matter that he wishes to proceed against. From my careful review of the allegations against McMaster-Carr in *Bornstein II*, I conclude that they mirror those against McMaster-Carr in *Bornstein I*. Accordingly, I will, *sua sponte*, dismiss the claims against McMaster-Carr in *Bornstein II* with prejudice and remand *Bornstein II* to state court.[5]

---

[5] *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31-32 (2025) (citation omitted) (stating that a district court should "kick the case to state court" when a district court has dismissed all federal claims).

7

## V. CONCLUSION

For the foregoing reasons, *Bornstein I* will be dismissed with prejudice, the claims against McMaster-Carr in *Bornstein II* will be dismissed with prejudice, and *Bornstein II* will be remanded to state court.[6]

                                                        */s/ Edward S. Kiel*
                                                      **EDWARD S. KIEL**
                                                     **UNITED STATES DISTRICT JUDGE**

Dated:   February 24, 2025

---

[6] In *Bornstein II*, defendants Bonnie Frost, Esq. and Einhorn Harris Archer Barbarito & Frost filed a motion for remand on February 10, 2025 (Remand Motion). (*Bornstein II* ECF No. 6.)   The Remand Motion will be administratively terminated as moot.